About 2:00 o'clock of the afternoon of January 31, 1941, there occurred near Lee's Service Station, a short distance south of the Town of Many, Louisiana, a collision between a 1932 model Chevrolet coupe owned and driven by plaintiff, W.M. Hilderbrand, and a loaded log truck-trailer combination belonging to S.D. Peterson and operated by his employee, Buck Alford.
Just prior to the accident, both vehicles were proceeding toward the south on the Many-Leesville Highway, the automobile being ahead and the truck attempting to pass it. Contact was made when plaintiff executed a left turn across the highway for the purpose of entering the named service station.
In this suit against Peterson and Alford a recover a judgment of $195 for the damage to his automobile and for the loss of its use, plaintiff alleges:
"That said collision was caused solely and alone by the gross negligence, carelessness and want of care on the part of the driver of said log truck, and particularly in that (1) said truck was being driven at an excessive and dangerous speed, while heavily loaded with logs; (2) that no effort was made to stop or slow down said truck, or said truck was not equipped with proper brakes."
Defendants deny that Alford was negligent or in any manner responsible for the accident. Alternatively, they plead that plaintiff was contributorily negligent.
Plaintiff obtained a judgment against defendants in solido for $100, and they appealed suspensively.
The Many-Leesville Highway pursues a straight course north and south in the vicinity of the accident's scene and has a concrete surface with wide level shoulders. Lee's Service Station is situated about 40 feet east of its center. The view along the road is unobstructed from a point some distance south of the station to a rise or *Page 379 
small hill existing about 400 yards north of it.
The truck-trailer combination, loaded with logs approximately 32 feet long, followed the Chevrolet automobile for about a quarter of a mile until after both vehicles, proceeding toward the south, had negotiated the mentioned rise. Then the truck driver, Alford, steered his vehicle to the left traffic lane, and, observing no on-coming or other traffic, commenced to overtake and pass the car. The truck's horn was sounded a number of times, as was attested by several persons in addition to the driver; however, plaintiff failed to hear it.
It was plaintiff's testimony that when 30 or 35 feet from the station, traveling from 10 to 15 miles an hour, he signaled the contemplated turn with his left hand. The truck, in close proximity, was not observed, notwithstanding his looking into the rear view mirror. Plaintiff was asked: "If he was close behind you could you have seen him?" He replied: "Yes, sir, but he was on the wrong side and I couldn't see him."
Plaintiff further testified that he completed his left turn and his car was off the pavement when the truck came between the automobile and the station and "hit the front end of my car and knocked me around and hit the hind wheels."
According to a witness named Knipper, the truck passed him, when he was 300 feet north of the station, going 30 or 35 miles an hour and on the left side of the road, and the closer it approached the station the farther to the left it turned; and at the time of the accident it was off the pavement.
Emmet Crittington, who testified for plaintiff, heard the continuous sounding of the truck's horn, saw plaintiff signal the left turn with his hand, and observed the truck proceeding slowly, about 10 or 15 miles per hour, with its left wheels off the pavement. The contact of the vehicles occurred at a point about 15 feet north of the station's right-of-way, they being "pretty well stopped when they went together"; and "the front of the truck got by before it hit."
The truck driver's version of the accident is that he was in the act of passing to the left of plaintiff's car, after having sounded his horn, as the left turn commenced. Being beside the automobile, he was unable to pull behind it; and to avoid a collision he steered his vehicle from the road. The left front fender of plaintiff's machine ran into the right hind wheel of the trailer, the truck portion of the logging combination having already passed the car.
Mrs. Aldridge, who resides nearby and witnessed the impact, was positive that the trailer's right rear wheel was struck by the car's front, as the truck driver stated. Corroborative also is the physical and undisputed fact that the trailer and its load of logs turned over, whereas the truck part, equipped with four wheels, was not damaged or otherwise affected by the blow.
The evidence in the record does not preponderately support plaintiff's allegations of excessive speed, improper driving, and inadequate brakes. On the contrary, it is convincing that the truck driver was observing the laws of the road and was attempting to pass plaintiff when the latter, heedlessly, indulged in the hazardous left turn maneuver across a highway that ordinarily experiences heavy traffic.
If the driver of the automobile had been reasonably prudent and observant, he would have noticed the overtaking and passing machine on his left and permitted its safe passage; and, in the eyes of the law, he is held to have seen that which he should have seen. Therefore, in our opinion it was his negligence that proximately caused the accident.
Plaintiff's counsel, as is disclosed by his brief, recognizes the well established doctrine that a person attempting the dangerous left hand turn on a much traveled highway is required to employ unusual care; but he argues that this case is governed by an exception to the rule which is stated in Drake v. Hardware Mutual Casualty Company, La.App., 194 So. 70, 72, as follows:
"The execution of a left turn on a much traveled street or highway is, in fact, and has been uniformly held to be, one of the most hazardous of which a motor vehicle is capable. However, when traffic conditions at a given point warrant such a movement, a motorist has the right to rely upon such conditions and proceed. If the conditions are altered by the sudden and careless action of another motorist, the legal aspect of the situation, so far as concerns the motorist making the turn, is not affected."
If, in the instant controversy, no traffic had been in close proximity when plaintiff's left turn was undertaken, his movement would have been warranted. But, as before seen, a condition of that kind did not *Page 380 
prevail; and the mentioned exception to the rule is not here pertinent.
There is manifest error, we think, in the decision of the district court.
Accordingly, the judgment appealed from is reversed and set aside, and there is now judgment in favor of defendants rejecting the demands of plaintiff and dismissing his suit with costs.